IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DONALD PORTER, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 08-33-HU |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MERRILL SCHNEIDER
P.O. Box 16310
Portland, OR 16310

LINDA ZISKIN
3 Monroe Parkway, Suite P
Lake Oswego, OR 97035

      Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITTANA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

DAVID J. BURDETT
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

HUBEL, Magistrate Judge:

      Plaintiff Donald Porter ("Porter") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

      For the following reasons, I recommend the Commissioner's decision be AFFIRMED.

## PROCEDURAL BACKGROUND

      Born in 1955, Porter has an eleventh grade education. Tr. 71, 97.[1] Porter reports work as a carpenter, laborer, and utility tool worker. Tr. 92. Porter was forty-seven on his alleged disability onset date, and fifty-one at the time of his hearing. Tr. 25, 71.

      Porter applied for DIB and SSI on August 5, 2005, alleging disability since July 30, 2004. Tr. 71, 77. Porter alleged disability due to degenerative disc disease and left eye blindness. Tr. 91. The Commissioner denied Porter's applications initially and upon reconsideration. Tr. 39-48, 50-55. An ALJ held a hearing on April 27, 2007 (Tr. 283-325), and subsequently found Porter not disabled on May 23, 2007. Tr. 17-26. The Appeals Council denied Porter's request for reconsideration and the ALJ's decision became final on November 6, 2007. Tr. 5.

---

      [1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #8).

2 - FINDINGS AND RECOMMENDATION

## FACTUAL BACKGROUND

**I.    Medical Evidence**

Porter was injured in a lumber industry workplace accident on March 12, 2003.  Tr. 158.

Porter sustained crushing injuries to his jaw, ribs, and spleen, and a puncture wound to his left leg.

Tr. 159-60.  Porter was hospitalized between March 12, 2003, and March 20, 2003  Tr. 255-73.  By

May 1, 2003, Porter's fractured ribs were "well healed" and his spleen continued to heal.  Tr. 152.

Porter's left leg wound continued to heal during this period as well.  Tr. 160.  Porter reports

that his leg wound developed cellulitis immediately following his initial injury, and that he sought

emergency room treatment.  Tr. 200.  The record before this court does not document this treatment.

Subsequent references to Porter's leg wound in the record before this court show that Porter reported

pain and swelling in 2004 and 2005, without clinically observed symptoms.  Tr. 168, 202, 205,

Porter also reported headaches between July 2003 and February 2004.  Tr.  211, 216, 218.

Physicians associated Porter's headaches with post-concussive syndrome in February 2004.  Tr. 211-

14, 216.  Neurologist Dr. Chen also suggested that Porter had a post-concussive syndrome stemming

from Porter's industrial accident.  Tr. 252.  A December 12, 2003, MRI showed "one isolated

asymptomatic cysticercosis lesion," which Dr. Chen found consistent with neurocysticercosis.[2]  Tr.

254.  Dr. Chen also assessed post-concussive syndrome stemming from Porter's industrial accident.

Tr. 252.

The record before this court indicates that Porter continued to report chronic rib and back

pain between May 2003 and January 2006.  Tr. 182-222.  In August 2005 physicians diagnosed

---

[2]Nuerocysticercosis is "the most common parasitic disease of the nervous system,"
resulting from accidental ingestion of tapeworms commonly found in pork.  George G. Burneo,
M.D., "Neurocysticerocosis," *emedicine from Web M.D.*, *available at*
http://emedicine.medscape.com/article/1168656-overview (last visited March 19, 2009).

3 - FINDINGS AND RECOMMENDATION

chronic pain syndrome.  Tr. 185-87.  Porter received methadone and other pain medications throughout the period between his initial injury and the March 2007 record closure.  Tr. 182-219, 236-48.

Porter has additionally been functionally blind in his left eye since early childhood.  Tr. 167, 169.  Porter reported to examining physician Dr. Ramsthel that he has 20/400 vision in that eye.  Tr. 167.  Treating physician Dr. Gray noted that Porter's left eye impairment preceded his March 2003, industrial injury, but made no other notation regarding Porter's eye.  Tr. 204.  Porter reported to neurologist Dr. Chen that he experienced "blurred vision" in his right eye; Dr. Chen stated that he "could not explain" this and recommended that Porter have a further eye examination.  Tr. 254. The record before this court does not show any visual examination results for the right eye.

## II.    Porter's Testimony

Porter testified at his April 27, 2007, hearing that he worked after his March 2003 alleged onset date for a firm called Labor Ready.  Tr. 287.  Porter stated that following his Worker's Compensation claim he "just went there to show up."  *Id.*  Porter clarified that the firm would have him sweep floors or pass out pamphlets, and stated that the firm did not send him out on jobs.  Tr. 288.  Porter testified that he has done no other subsequent work, and stated that he has not worked "under the table."  Tr. 293.

Porter also described pain stemming from his alleged impairments.  Porter stated that his lower back hurt at a "pretty constant" rate, and that this pain averages "around eight" on a one-to-ten scale.  Tr. 294.  He testified that pain medication reduces his back pain to a "five" on this scale.  *Id.* Porter stated that this pain worsens with bending of lifting.  Tr. 295.

Porter subsequently testified that he experiences constant neck pain which also averages a

4 - FINDINGS AND RECOMMENDATION

five with pain medication. *Id.* He stated that his neck pain worsens when he does dishes, "lifts up" or when he looks down. Tr. 296.

Regarding his headaches, Porter stated that he has one "almost every day. I take my aspirin and stuff and it'll help me." Tr. 296. He said that his headaches are an "eight" on a one-to-ten scale, and that they "go down to about a five" when he takes aspirin. Tr. 297.

Porter stated that he experiences rib pain and "sometimes they'll go out on me" and he will feel "like I am having a heart attack almost." *Id.* This occurs when Porter coughs hard, which will "blow them out or make them go out." *Id.* Porter explained that this sensation will "hurt real bad," and that he experiences "a sharp pain." Tr. 298. Porter stated this occurs "about every four months." *Id.*

Regarding his leg injury, Porter stated that his left leg swells "every time I stand on it." Tr. 299. Porter further stated that this happens "when I wear shoes," and that the swelling begins after ten minutes. *Id.* He also stated that his left leg is painful and "goes numb." *Id.* When this occurs, Porter stated that he reclines and elevates his leg. Tr. 300. Porter first testified that when his leg is not swollen his leg pain is "about an eight," but subsequently stated that when his leg is not swollen, "it's not really that - - its about a five then." *Id.* Porter characterized his leg injury as a "hole" resulting from his industrial injury, but also stated that his leg injury was not included in his Worker's Compensation settlement. Tr. 300-01.

Porter also testified that he received narcotic pain medication. Tr. 302-03. When questioned about methadone detoxification, Porter replied, "I guess that was their attorney," referring to his Worker's Compensation proceedings. Tr. 302-03. Porter reported that he asked this same attorney "what am I going to do for my pain and stuff," and that, "my doctor told them the same thing,"

5 - FINDINGS AND RECOMMENDATION

regarding possible narcotic cessation.  *Id.*

Porter stated that his left eye is "gone," and that he is "considered blind" in his left eye.  Tr. 303.

Finally, Porter stated that he experiences pain and swelling in his shoulders.  Tr. 304.  He explained that his shoulders hurt when he does "motions and stuff" and that this pain radiates into his neck.  Tr. 305.

Regarding his activity level, Porter stated that he may stand fifteen minutes at one time, and can walk "one small block."  Tr. 306.  If he walks further, Porter stated that he must stop and rest.  Tr. 307.  Porter also stated that he can lift five pounds at one time, and that his back will hurt if he lifts more than five pounds.  Tr. 309.  Porter stated that he tries to vacuum, but that pushing the vacuum causes pain in his back and leg.  Tr. 310.  Porter testified that he can perform activity for about ten or fifteen minutes before he must rest, and that he must rest "a couple of days" after mowing his lawn.  *Id.*  Porter stated that he must lean on a cart when grocery shopping because his leg swells.  Tr. 314.  Finally, Porter stated that his sleep is interrupted by thoughts of his brother passing away.  Tr. 315.

## III.    Vocational Expert's Testimony

The vocational expert testified that Porter's most recent work as a sweeper at Labor Ready was medium, unskilled work,  and classified Porter's previous general labor work at Labor Ready as medium, unskilled work.  Tr. 320.  The vocational expert testified that Porter's past work as a plastics blender and utility worker was medium, semi-skilled work, and that Porter's work as a carpenter was medium, skilled work, with a specific vocational preparation ("SVP") level seven, which Porter "does not meet."  *Id.*  Finally, the vocational expert classified Porter's work as a fire

watch person as light, skilled work, with an SVP of seven. *Id.*

The ALJ gave the vocational expert a hypothetical question:

> I'd like you to consider . . . an individual the same age as our claimant who has the same educational background and work experience. First this first hypothetical, I'd ask you to consider that this person could do light work, would need to stretch and change positions for a few moments every hour, should only do occasional climbing, balancing, stooping, kneeling, crouching, and crawling and only occasional overhead work, should not be asked to exhibit any vision . . . more fine than that which he had in his past jobs because of the described limitation of his left eye.

Tr. 320-21.

The vocational expert replied that such an individual could not perform Porter's past relevant work. Tr. 321. The vocational expert subsequently stated that such an individual could perform work as a food assembler, electric motor assembler, or parking lot cashier. *Id.* The ALJ then asked the vocational expert to consider a hypothetical individual "unable to perform work on a day in/day out basis," who would have experience two or more absences per month. Tr. 322. The vocational expert replied that such an individual would be unable to maintain competitive employment in the national economy.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509;

7 - FINDINGS AND RECOMMENDATION

404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).   If the claimant does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment medically meets or equals a "listed" impairment in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the determines that the impairment meets or equals a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  This evaluation includes assessment of the claimant's statements regarding her impairments.   20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3).  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 C.F.R. §§ 404.1520(e); 416.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant can perform his past relevant work, he is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If the claimant cannot perform such work, he is disabled.  *Id.*

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F.3d at 1098.  If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration

the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§  404.1566, 404.1520(g); 416.966; 416.920(g).

Porter challenges the ALJ's findings at step two and step three.  Porter subsequently challenges the ALJ's finding that he could perform work in the national economy at step five in the sequential process.

## THE ALJ'S FINDINGS

At step one in the sequential proceedings the ALJ found that Porter had not engaged in substantial gainful activity since his March 12, 2003, onset date.  Tr. 19.  At step two, the ALJ found Porter's lumbar and cervical degenerative disc disease and deficient left eye vision "severe" at step two in the sequential proceedings.  Tr. 19.  The ALJ found Porter's leg wound, headaches, "asymptomatic cysticercosis," non-severe.  Tr. 20.  The ALJ also found insufficient medical evidence to establish that Porter has post-traumatic stress disorder.  *Id.*  At step three, the ALJ found that Porter's impairments did not medically meet or equal a listed impairment.  *Id.*

Between steps three and four the ALJ assessed Porter's RFC.  Here the ALJ found that Porter's statements regarding his symptoms "cannot be found to be sufficiently credible to serve as additive evidence to support a finding of disability."  Tr. 23.  The ALJ found that Porter retains the following RFC:

> [T]he claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently.  During an eight-hour day he can stand, sit and walk for up to six hours provided he is permitted to change his position between sitting and standing for a few minutes every hour to relieve pain and discomfort.  Furthermore, he is limited to only occasional overhead reaching, climbing, balancing, stooping, kneeling, crouching, and crawling.

9 - FINDINGS AND RECOMMENDATION

Tr. 21.  Regarding Porter's left eye, the ALJ found that Porter "should not be required to perform tasks requiring visual acuity beyond that required in his past relevant work."  At step four, the ALJ found that Porter could not perform his past relevant work.  Tr. 25.  At step five in the sequential proceedings the ALJ found that Porter may perform work in the national economy as a food assembler, electric motor assembler, or parking lot cashier.  Tr. 25-26.  The ALJ therefore found Porter not disabled at any time through the date of his decision.  *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Porter challenges the ALJ's evaluation of treating physician Dr. Gray and examining physician Dr. Ramsthel, and the ALJ's findings at step two and step three.  Porter also challenges the ALJ's RFC assessment and the ALJ's step five conclusion that Porter may perform work in the national economy.

## I.    Porter's Credibility

Porter does not challenge the ALJ's credibility assessment.  However, he repeatedly cites his own testimony throughout his argument as a reason the ALJ should be reversed.

The ALJ found Porter's allegations regarding the severity of his symptoms "only partially credible."  Tr. 22.  The ALJ primarily based his credibility finding upon Porter's activities of daily living, work history, and clinical findings in the medical record.  Tr. 22-23.  The ALJ may consider all of these factors in his credibility assessment.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Porter does not challenge these findings.  I note the ALJ is in a better position to evaluate Porter's credibility than a reviewing court, having observed him testify at the hearing.

Because Porter offers no credibility challenge directed at the ALJ's analysis, and because Porter was represented by counsel, this court will not disturb the ALJ's credibility decision. Therefore the ALJ's assessment of Porter's testimony regarding his activities and general symptoms should be affirmed.  Thus, the court does not rely on Porter's testimony to support reversing any findings by the ALJ due to his lack of credibility in the ALJ's view.

## II.    Medical Source Statements

Porter claims the ALJ erroneously evaluated the opinions of treating physician Dr. Gray and examining physician Dr. Ramsthel.  Porter also claims the ALJ failed to address the effects of his rib and jaw fractures, leg abrasion, and headaches.

### A.    Standards

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in

favor of an examining physician. *Id.*, at 830. The ALJ may reject a physician's opinion predicated upon the subjective complaints of a claimant deemed not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ may not, however, reject physician opinions predicated upon reports of a claimant deemed not credible where independent clinical testing supports the physician opinion. *Ryan v. Comm'r*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

Nurse practitioners are not "acceptable medical sources" under the Commissioner's regulations. 20 C.F.R. § 404.1513(d)(1). If a nurse practitioner works under the supervision of a physician in a team environment, then the nurse practitioner's opinion may be construed as an element of the physician's opinion. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

### B. Physician Opinions

Porter challenges the ALJ's findings regarding treating physician Dr. Gray and examining physician Dr. Ramsthel.

#### a. Treating Physician Dr. Gray

Porter claims the ALJ inappropriately found that Dr. Gray's work restrictions did not preclude employment. Pl.'s Opening Br. 13. Porter also claims the ALJ failed to consider Dr. Gray's opinion that Porter carried a poor prognosis and alleges that the ALJ's assessment of Dr. Gray's opinion was biased. *Id.*

##### i. Dr. Gray's Work Restrictions

Dr. Gray released Porter to modified duty work on October 3, 2003, restricting Porter from heavy lifting, carrying, and climbing. Tr. 215. Dr. Gray subsequently stated on March 31, 2004, that Porter "certainly could do a sedentary job." Tr. 208. On April 5, 2007, Dr. Gray completed a questionnaire describing Porter's medical status prior to Porter's April 27, 2007 hearing before the

ALJ.  Tr. 274-79.  Dr. Gray indicated that Porter could occasionally and frequently lift less than ten

pounds, stand or walk no more than five to ten minutes, stand one hour in the course of an eight-hour

day, and sit two hours in the course of an eight hour day.  Tr. 277-78.  Dr. Gray also indicated that

Porter could not reach, handle, or pull objects, and that Porter should avoid frequent exposure to

environmental irritants.  Tr. 278.  Dr. Gray checked a box indicating that Porter must "lie down

during the day," and wrote that Porter must do this for "2-3 hours/day."  Tr. 279.  Finally, when

asked to "list the evidence that supports your conclusion," Dr. Gray stated that Porter would miss

work two days per week.  *Id.*

The ALJ noted Dr. Gray's work restrictions from, respectively, 2003, 2004, and 2007.  Tr.

24.  Porter challenges the ALJ's assessment of Dr. Gray's October 3, 2003, chart note and his April

2007 work restrictions.

### ii.    October 3, 2003, Chart Note

The ALJ found that Dr. Gray indicated that Porter could perform "at least sedentary work,"

citing "exhibit 6F: 34." Tr. 24 (citing Tr. 215).  The ALJ's citation refers to Dr. Gray's October 3,

2003, chart note.  *Id.*  Porter submits that the ALJ misconstrued Dr. Gray's limitation, arguing that

Dr. Gray placed no qualification on his restriction, and that Dr. Gray therefore expressly limited

Porter to sedentary work.  Pl.'s Opening Br. 13.  This argument is unpersuasive; the record shows

that on October 3, 2003, Dr. Gray stated that Porter "can't do any heavy lifting, carrying, climbing."

Tr. 215.  A plain reading of Dr. Gray's weight restriction suggests that Porter may lift and carry up

to, but not including, heavy weights.  Dr. Gray's chart note additionally refers to a concurrent work

release, but the record before this court does not contain an October 3, 2003, work release; counsel

additionally makes no reference to the indicated work release.  Dr. Gray's chart note did not make

13 - FINDINGS AND RECOMMENDATION

any further lifting restrictions and did not specify sedentary work.  The ALJ's assessment of the October 3, 2003, chart note is based upon the record and should be affirmed.

### iii.    April 5, 2007, Work Restrictions

The ALJ specifically found Dr. Gray's April 2007, restrictions unsupported by his own clinical notes.  Tr. 24.  The ALJ may reject physician opinions unsupported by clinical notes or findings.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The record shows that Dr. Gray treated Porter between May 2003 and January 2006.  Tr. 182-85, 187-93, 195, 197-205, 207-08, 210-12, 214-15, 219, 220-22, 239.  Dr. Gray also treated Porter on November 30, 2006.  Tr. 239.  Subsequent to his October 2003 restrictions discussed above, Dr. Gray suggested that Porter could perform sedentary work in March 2004 (Tr. 208), and noted that Porter was working[3] with unspecified "limitations" in April 2004.  Tr. 207.  Dr. Gray also noted Porter's reports that Porter did not think he could work in June 2004 and July 2005.  Tr. 188, 205.  Dr. Gray's notes show no additional work restrictions.  Thus, the record supports the ALJ's finding that Dr. Gray's own notes do not support his April 2007 assertion that Porter could not work.

The court additionally notes that Porter cites his own testimony in support of his argument regarding Dr. Gray's April 2007 work restrictions.  Pl.'s Opening Br. 14-15.  Many of Porter's citations refer to Porter's reports of headaches (Tr. 216-17) and increased chronic pain.  Tr. 197-99, 200-02, 205-06, 209, 218.  Dr. Gray also reiterated Porter's reports of his limitations.  Dr. Gray wrote, "I can't stand up for 8 hours or sit 8 hours to work."  Tr. 188.  Because the ALJ found Porter not credible, and because Porter does not challenge this finding, these citations do not support

---

[3]Dr. Gray does not specify what work Porter was performing, writing only that Porter "has actually been able to return to work."  Tr. 207.  Porter's most recent work was as a sweeper at Labor Ready.  Tr. 287.

Porter's claim that the ALJ erroneously rejected Dr. Gray's April 2007 opinion.

Porter also contends that the ALJ's failure to cite Dr. Gray's April 11, 2007, comment that Porter's self-report that he was "unable to continue working" constitutes a selective reading of the record. Pl.'s Opening Br. 13 (citing Tr. 279). The ALJ discussed the April 11, 2007, form that Dr. Gray submitted to Porter's attorney. Tr. 24. The ALJ found the form unsupported by Dr. Gray's clinical notes. *Id.* Physician opinions unsupported by clinical notes or findings may be rejected. *Bayliss*, 427 F.3d at 1216. The ALJ need not discuss every piece of evidence on record provided that his decision is supported by substantial evidence. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Furthermore, Dr. Gray's April 2007 comment refers to Porter's ability to return to his past relevant work. Tr. 279. Because the ALJ found that Porter could not return to such work at step four (Tr. 25), the ALJ's opinion is consistent with Dr. Gray's comment. The ALJ's findings regarding Dr. Gray's April 2007 work restrictions are therefore based upon the record and should be affirmed.

### iv.    Dr. Gray's Prognosis

Porter asserts that the ALJ erroneously found that Dr. Gray assessed Porter with a "good" prognosis. Pl.'s Opening Br. 15. Dr. Gray noted that Porter's prognosis was "poor" (Tr. 215) on October 3, 2003, but on July 6, 2004, Dr. Gray amended this prognosis to "good if he can continue working." Tr. 204. The ALJ cited Dr. Gray's July 6, 2004, "good" prognosis. Tr. 24. This citation to Dr. Gray's revised, most recent, prognosis is based upon the record and should be affirmed. Furthermore, prognoses such as those offered by Dr. Gray on October 3, 2003, and July 6, 2004, do not reveal any work-related limitations or an inability to perform work activity and therefore have no evidentiary value on the issues before the ALJ.

**v.    Allegation of Bias**

Porter finally asserts that the ALJ improperly speculated upon Dr. Gray's motivation in restricting Porter from work. Pl.'s Opening Br. 15-16. The ALJ stated that a physician may "express an opinion in an effort to assist a patient with whom he or she sympathizes." Tr. 24.

A claimant asserting bias shoulders a significant burden of proof, as the presumption is that hearing officers are unbiased. *Bayliss*, 427 F.3d at 1214-15. Thus, to succeed on a claim of bias, the claimant must show that "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment," such as a conflict of interest or other specific reason. *Id.* at 1215 (citations and internal quotations omitted). Because the ALJ's findings regarding Dr. Gray's opinion are based upon the record and correct legal standards, Porter fails to establish that the ALJ was improperly biased.

In summary, the ALJ's review of Dr. Gray's opinion and notes are based upon the record and the correct legal standards. These findings should be affirmed.

**b.    Examining Physician Dr. Ramsthel**

Porter contends that the ALJ failed to include Dr. Ramsthel's limitations in Porter's RFC assessment. Pl.'s Opening Br. 12 (citing Tr. 23). Porter's argument repeatedly cites the ALJ's opinion (Tr. 23), but does not point the court directly to pertinent portions of Dr. Ramsthel's opinion.

**i.    Dr. Ramsthel's Evaluation**

The record shows that internist Dr. Ramsthel examined Porter on September 24, 2005. Tr. 167-170. Dr. Ramsthel concluded "I believe [Porter] has degenerative disc disease of the cervical spine, and probably the lumbar spine," and also noted Porter's left eye blindness. Tr. 170. Dr. Ramsthel stated that Porter has substernal chest pain, "cause undetermined." *Id.* Dr. Ramsthel found

that Porter could stand and walk at least one hour before requiring rest, and sit at least two hours

before changing positions.  Dr. Ramsthel also found that Porter could lift and carry fifteen to twenty

pounds infrequently and ten pounds frequently.  *Id.*

### ii.    Dr. Ramsthel's Weight Restrictions

Porter's submits that Dr. Ramsthel restricted him to lifting fifteen pounds, and therefore

restricted him to sedentary work.  Pl.'s Opening Br. 12.  Dr. Ramsthel stated that Porter could lift

up to twenty pounds "infrequently."  Tr. 170.  An "occasional" twenty-pound weight restriction leads

to a finding of "light" work under the Commissioner's regulations.  20 C.F.R. §§ 404.1567(b);

416.967(b).  I find Dr. Ramsthel's "infrequent" weight restriction consistent with the "occasional"

language in the Commissioner's regulations.  Porter's assertion that he could not lift more than

fifteen pounds and is therefore restricted to sedentary work is not based upon the record or the

applicable regulations and should be rejected.

### iii.    Dr. Ramsthel's Rest Requirements

The ALJ noted Dr. Ramsthel's findings and interpreted Dr. Ramsthel's opinion "to mean the

claimant was capable of performing light exertional level work, provided that he be allowed a short

rest of a few minutes every hour or two."  Tr. 23.  Porter now submits that the ALJ failed to include

the "short rest" in his RFC assessment and questions to the vocational expert.  Pl.'s Opening Br. 12.

The ALJ's RFC assessment stated that Porter must be "permitted to change his position

between sitting and standing for a few minutes every hour to relieve pain and discomfort."  Tr. 21.

Dr. Ramsthel stated that Porter could stand and walk at least an hour before resting and sit at least

two hours before changing positions.  Tr. 170.  The ALJ's RFC adequately reflects Dr. Ramsthel's

stated restriction and should be affirmed.

17 - FINDINGS AND RECOMMENDATION

In summary, the ALJ's findings regarding Drs. Gray and Ramstehl are based upon the record, and they should be affirmed.

## C.     Specific Impairments

Porter asserts that the ALJ failed to address his jaw and rib fractures, leg wound, headaches, and cognitive impairments. Porter's initially claimed disability based upon his degenerative disc disease and impaired vision. Tr. 91. His initial application did not cite any of the impairments discussed below.

### a.     Jaw and Rib Fractures

Porter contends that the ALJ improperly addressed limitations arising from fractures of his jaw and ribs suffered as a consequence of his March 2003 industrial injury. Pl.'s Opening Br. 17.

I disagree. First, Porter did not raise these impairments in his initial Disability Report filed with his application for benefits. Tr. 91. Additionally, no physician, including Dr. Gray, discussed above, noted limitations stemming from these impairments. Furthermore, the evidence Porter cites in support of his argument points only to his own reports to physicians. Pl.'s Opening Br. 15 (citing Tr. 197-206). Here I note that the ALJ discussed Porter's testimony regarding his rib and generalized musculoskeletal pain complaints, but found this testimony not credible. Tr. 22-23. For all of these reasons, Porter fails to show reversible error in the ALJ's assessment of his jaw and rib fractures.

### b.     Left Leg Puncture Wound

Porter also asserts that the ALJ erroneously assessed the puncture wound to his leg. Porter submits that the wound "failed to heal, and continues to create problems." Pl.'s Opening Br. 17 (citing Tr. 168, 202, 299-301).

The ALJ's findings cited a March 12, 2003, trauma clinic report showing that Porter

18 - FINDINGS AND RECOMMENDATION

sustained a puncture wound over his left tibia, and noted that no trauma treatment was indicated for this wound. Tr. 19-20. The ALJ also noted that a May 1, 2003, follow up examination revealed no abnormalities in his left leg. Tr. 20. The record supports this finding: initial trauma notes do not indicate treatment for a leg wound (Tr. 160) and a May 1, 2003, trauma clinic follow-up evaluation does not mention Porter's leg wound. Tr. 153. The ALJ's findings are thus based upon the record.

Porter now cites three instances in the record regarding his leg wound. Pl.'s Opening Br. 17 (citing Tr. 168, 202, 299-300). A nurse practitioner, James Cook, noted that Porter reported intermittent leg swelling and pain on August 30, 2004. Tr. 202. Dr. Ramsthel noted on September 24, 2005, that Porter reported that his left leg swells following his injury, but that "at this time it only seems to swell when he wears a high top shoe or boot. Otherwise, if he wears a sandal or low-top shoe it does not seem to swell." Tr. 168. This note is based upon Porter's own report. Dr. Ramsthel did not indicate an ongoing infection. *Id.* Finally, Porter testified that his leg swells "every time I stand on it," and when he wears shoes. Tr. 299. The record contains no doctor's opinion finding Porter was limited in any way from the leg issues.

Porter's submissions addressing his left leg wound (Tr. 168, 202, 299) are again based upon his own reports to physicians and his own testimony. Porter does not challenge the ALJ's credibility finding, noted at several instances above. Because Porter does not challenge the ALJ's credibility finding, and because no objective observations support his assertion, his present arguments based upon his own testimony cannot be a basis for reversing the ALJ. The ALJ's findings regarding Porter's left leg wound are based upon the record and should be affirmed. Tr. 20.

### c.    Headaches

Porter also submits that the ALJ failed to find his headaches severe. Pl.'s Opening Br. 17.

The ALJ noted Porter's statements that his headaches are "adequately controlled with aspirin," Tr. 20, and that his headaches remained a "5" on a 1-10 scale with aspirin. Tr. 22. Porter contends these findings are not based upon the record. The record shows that the ALJ asked Porter "does [the headache"] go away when you take aspirin?" Tr. 296. Porter responded, "Yeah, for awhile," and indicated that the headache will return within a day. *Id.* In response to questioning, Porter subsequently stated that his headache pain ranges between a "5" and an "8" on a 1-10 scale. Tr. 297.

The ALJ's assessment of these comments is based upon the record. Porter points only to his own reports of his headaches, failing to point to clinical observations regarding the effects or work-related limitations related to his headaches. Pl.'s Opening Br. 17 (citing Tr. 214, 218, 252). The ALJ's finding should therefore be affirmed.

### d.    Cognitive Impairments

Finally, Porter claims the ALJ failed to assess his cognitive impairments at step two. Pl.'s Opening Br. 18. Porter did not claim cognitive impairments in his initial application for benefits (Tr. 91); nor did he raise this argument at his hearing, where he was represented by counsel (Tr. 283-325), or before the Appeals Council. Tr. 280-82. A claimant who is represented by counsel who fails to raise an issue below cannot now claim the ALJ failed to address these impairments. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Therefore, any alleged omission regarding Porter's cognitive impairments will not be addressed.

In summary, the ALJ's findings regarding Porter's specific impairments, discussed above, are based upon the record and should be affirmed.

### III.    The ALJ's Step Two Findings

Porter contends that the ALJ made an "incomplete" finding at step two because the ALJ did

not find his jaw and rib fractures, leg abrasion, and cognitive impairment severe.  Pl.'s Opening Br. 17.

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. §§ 404.1520©); 416.920©); *see* also 20 C.F.R. §§ 404.1521; 416.921.  Such an impairment must last, or be expected to last, twelve months.  20 C.F.R. §§ 404.1509; 416.909.

The ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe.  20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2).  Because the ALJ proceeded beyond step two in the sequential analysis, the court does not consider the effect of the ALJ's alleged error at step two, but considers it in reviewing the ALJ's subsequent findings.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis).  For this reason, the court declines to discuss severity of Porter's jaw, rib,  leg, and headache impairments at step two.  Porter establishes no reversible error at step two in the sequential analysis.

## IV.    The ALJ's Step Three Findings

Porter also contends the ALJ failed to find that his impairments meet or equal Listing 12.02 ("Organic Mental Disorders") at step three in the sequential evaluation.  Pl.'s Opening Br. 18.  Porter does not develop this argument, stating only that the ALJ's "lack of findings at step two" and failure to assess his cognitive impairments under Listing 12.02 "therefore taints his subsequent findings" at step three.

The ALJ's step three findings are to be based upon medical evidence.  20 C.F.R. §§

404.1520(a)(iii); 416.920(a)(iii).  The ALJ's assessment of the medical record here is based upon the medical record and correct legal standards.  Porter's unsupported assertion that the ALJ failed to find that he met or equaled a listing at step three should therefore be rejected.  Additionally, an ALJ's omission at a threshold step is harmless where the ALJ proceeded beyond the indicated step in the sequential analysis.  *See Lewis*, 498 F.3d at 911.  Porter's step three challenge should also be rejected because the ALJ proceeded beyond step three.

## V.     The ALJ's RFC Assessment

Porter contends that the ALJ failed to appropriately assess his RFC.  Porter specifically asserts that the ALJ should have restricted Porter to sedentary work, stating that the ALJ "points to no supporting evidence" that he can "lift in the light exertional range."  Pl.'s Opening Br. 18.  Porter also contends that the ALJ's RFC finding limits him to a total of six hours of sitting, standing, or walking.  *Id.* at 19.  Here Porter asserts that the ALJ failed to adhere to SSR 96-8p regarding regular and continuing work.  *Id.*

The ALJ found that Porter could lift up to twenty pounds occasionally and ten pounds frequently, with the additional postural and non-exertional limitations described in Porter's RFC.  Tr. 20-21.

### a.     Light Work

Porter asserts that the ALJ "points to no supporting evidence" in finding that Porter may lift up to twenty pounds.  Pl.'s Opening Br. 18.  Porter's assertion that the ALJ failed to cite evidence supporting the lifting restrictions in Porter's RFC is unfounded.

The ALJ made his RFC finding after reviewing the evidence discussed above and other evidence of record.  Tr. 20-25.  The ALJ discussed specifically discussed Porter's testimony, his

daily activities, and his unreported work activity.  Tr. 22-23.  The ALJ also discussed Porter's general medical record, the specific opinions of Drs. Ramsthel and Gray, and the opinions of Disability Determination Services[4] physicians.  Tr. 23-24.

### b.    Hours Worked

The ALJ also found that "during an eight-hour day [Porter] can sit, stand and walk for up to six hours provided he is permitted to change his position between sitting and standing for a few minutes every hour . . . ."  Tr. 21.  This court interprets the ALJ's statement to mean that Porter may work eight hours per day, provided he is permitted to change his position between sitting, standing, and walking as indicated.  A finding that the ALJ indicated that Porter may only work six hours per day, whether he stands, sits, or walks, contradicts the ALJ's statement that Porter can perform these activities "during an eight-hour day."  *Id.*  This court therefore finds that a plain reading of the ALJ's statement indicates that Porter can perform the indicated work activities "during an eight-hour day."  The ALJ's finding that Porter can work eight hours per day should be affirmed.

### c.    Social Security Ruling 96-8p

Porter contends that the ALJ failed to find that he is capable of regular and continuing employment under SSR 96-8p.  Pl. Opening Br. 19.  SSR 96-8p states that "ordinarily" the ALJ considers a claimant's ability to work eight hours per day, five days per week.  SSR 96-8p at *1.  Porter recites this standard, but does not explain how the ALJ deviated from it.  Because Porter did not explain his argument, this court relies upon a plain reading of SSR 96-8p and finds that the ALJ implicitly considered Porter's ability to work eight hours per day, five days per week.  See discussion

---

[4]Disability Determination Services is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503, 416.903.

of Dr. Ramsthel's rest requirements, *supra*, 17.

Porter also alleges that the ALJ violated SSR 96-8p because the did not conduct a function-by-function analysis of his limitations. SSR 96-8p states that an RFC assessment is "a function-by-function assessment based upon all of the *relevant* evidence of an individual's ability to do work-related activities." SSR 96-8p at *3 (1996 WL 374184) (emphasis added). However, the Commissioner's regulations do not require an ALJ's RFC assessment to discuss a claimant's limitations with respect to each of the fifty-four work functions. 20 C.F.R. § 404.1545, 416.945. The Ninth Circuit has explicitly held that, "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss*, 427 F.3d at 1217. Here, the ALJ discussed the relevant evidence and properly assessed the medical evidence, discussed above. This analysis satisfies the requirements of SSR 96-8p.

In summary, the ALJ properly applied the Commissioner's regulations and rulings regarding Porter's RFC assessment.

## VI.    The ALJ's Step Five Finding

Porter does not challenge the ALJ's step five analysis in his Opening Brief. Porter's Reply Brief raises the argument that the ALJ failed to correctly consider his age in his step five findings. Pl.'s Reply Br. 3. Porter submits, without citing a legal authority, that the ALJ failed to consider his age at his date last insured. *Id.* Porter subsequently claims that the Medical-Vocational Guidelines ("grids") mandate a finding of disability. The ALJ based his step five finds upon the testimony of a vocational expert. Tr. 26.

The ALJ may rely upon the grids when they completely describe a claimant's exertional

24 - FINDINGS AND RECOMMENDATION

impairments. *Tackett*, 180 F.3d at 1101-02. If the claimant has non-exertional impairments not contemplated by the grids, such as poor vision or a requirement that he change positions, the ALJ must call a vocational expert. *Id.* Porter's RFC assessment includes non-exertional limitations stemming from his left eye blindness and a requirement that he change positions. Tr. 21. Therefore, the ALJ was required to call a vocational expert.

The ALJ's questions to the vocational expert must include limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Here, the vocational expert addressed a question regarding a hypothetical claimant that could not attend work two days per month. Tr. 322. This question reflects Porter's testimony that he could not maintain sustained activity, which the ALJ properly found not credible. The ALJ was therefore free to disregard this limitation.

For these reasons the ALJ's reliance upon the vocational expert was proper. The ALJ's step five findings should be affirmed.

## CONCLUSION

In summary, this court finds that the record supports the ALJ's finding that Porter did not suffer from a disabling condition. Porter fails to show that the ALJ inappropriately evaluated his combined impairments in reaching his RFC determination. Porter additionally fails to show that the ALJ's step five findings, based upon substantiated vocational testimony, were erroneous. The ALJ's findings should therefore be affirmed.

## RECOMMENDATION

The Commissioner's decision that Porter did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported

25 - FINDINGS AND RECOMMENDATION

by substantial evidence.  The Commissioner's decision should be AFFIRMED and the case should be dismissed.

## **SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due June 4, 2009.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due June 18, 2009, and the review of the Findings and Recommendation will go under advisement with the District Judge on that date.

IT IS SO ORDERED.

DATED this 20th day of May, 2009.

_____
Dennis James Hubel
United States Magistrate Judge